UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

PREMIER PROPERTY SALES LTD,

    Plaintiff,

vs.

GOSPEL MINISTRIES
INTERNATIONAL, INC.,

    Defendant.

Case No. 3:21-cv-14

District Judge Michael J. Newman

---

**ORDER (1) GRANTING DEFENDANT GOSPEL MINISTRIES INTERNATIONAL INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (DOC. NO. 9); (2) DENYING AS MOOT PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (DOC. NO. 4); (3) DISSOLVING THE JANUARY 27, 2021 STAY; (4) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S COMPLAINT (DOC. NO. 8); AND (5) TERMINATING THIS CASE ON THE COURT'S DOCKET**

---

This civil case is before the Court on Defendant Gospel Ministries International, Inc.'s motion to dismiss for lack of personal jurisdiction. Doc. No. 9. Plaintiff Premier Property Sales LTD filed an opposition memorandum (Doc. No. 10), and Defendant replied (Doc. No. 11). Defendant's motion is now ripe for review.

**I.**

Defendant is a non-profit corporation organized under the laws of Tennessee that performs international ministerial and service work. Doc. No. 9-2 at PageID 109. Defendant's principal place of business is in Tennessee. *Id.* Defendant has never had offices in Ohio, employed Ohio residents, maintained a process agent in Ohio, held an Ohio business license, paid taxes in Ohio, filed corporate records in Ohio, leased or owned property in Ohio, had an Ohio bank account, or performed ministerial work in Ohio. *Id.* Yet, Plaintiff sued Defendant in Ohio. Doc. No. 8.

Defendant's main source of revenue is private donations, but it leases or sells 2-to-3 private airplanes per year. Doc. No. 9-2 at PageID 110. Defendant does not market the sale of its airplanes in Ohio. *Id.* But Defendant has leased aircraft to Ohio residents on two occasions, one of which prompted the current dispute. *Id.*; Doc. No. 10-1 at PageID 126.

The private airplane in this case is, and for all relevant time periods was, located in New Mexico. Doc. No. 8 at PageID 72. Plaintiff's sole member -- Clay Chester, an Ohio resident -- learned about the airplane from a friend named Dylan Stormont, another Ohio resident. *Id.*; Doc. No. 9-1 at PageID 105. Stormont had recently leased a Utah-based private airplane from Defendant. Doc. No. 9-1 at PageID 105.

Once Stormont learned that Chester was interested in Defendant's New Mexico-based airplane, he contacted Brandtley Greenlaw, Defendant's chief pilot and an Oregon resident. *Id.* at PageID 105–06. Greenlaw arranged for Chester and Stormont to travel to New Mexico to inspect the airplane. Doc. No. 10-1 at PageID 127.

Chester and Greenlaw negotiated a 1-page lease-to-own agreement for the airplane while in New Mexico. Doc. No. 9-1 at PageID 106; Doc. No. 10-1 at PageID 127. The lease provided that Chester would take possession of the airplane in New Mexico. Doc. No. 8-1 at PageID 82. Chester verbally requested that the airplane's home base be changed from Collegeville, Tennessee to Madison County, Ohio, though the contract placed that responsibility on Plaintiff, not Defendant. Doc. No. 8-1 at PageID 106. Chester provided Greenlaw with a $90,000 deposit before returning to Ohio. Doc No. 10-1 at PageID 127.

Chester traveled back to New Mexico several weeks later to take possession of the plane only to find it was not in flying condition. *Id.* Greenlaw directed Chester to contact a local Federal Aviation Administration ("FAA") certified mechanic to install some parts. Doc. No. 9-1 at PageID

107. Defendant alleges that Chester proceeded to work on the aircraft himself and damaged its engine. *Id.* Plaintiff disputes that version of events and insists Greenlaw misrepresented the airplane's status during contract negotiations. Doc. No. 8 at PageID 75. Chester never took possession of the airplane, and it remains in New Mexico where it awaits FAA investigation. Doc. No. 9-1 at PageID 107.

Plaintiff filed suit against Defendant in the Clark County, Ohio Court of Common Pleas. Doc. No. 2. Plaintiff sought a preliminary injunction enjoining the sale of the aircraft, as well as damages for breach of contract, a violation of the Ohio Consumer Sales Practices Act, and unjust enrichment. *Id.* at PageID 14–15. Defendant removed Plaintiff's lawsuit on the basis of diversity jurisdiction on January 11, 2021. Doc. No. 1. Defendant promptly filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Doc. No. 5. The Court -- during an informal conference on January 26, 2021 -- asked Plaintiff to file an amended complaint setting forth the basis for the Court's personal jurisdiction over Defendant.[1] Plaintiff complied (Doc. No. 8), and now before the Court is Defendant's renewed motion to dismiss (Doc. No. 9).

## II.

A court has three different paths to resolve a Rule 12(b)(2) motion: (1) "decide the motion upon the affidavits alone"; (2) "permit discovery in aid of deciding the motion"; or (3) "conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Where the motion will be decided on the affidavits alone -- as the Court will do here -- a plaintiff need only make a *prima facie* showing of personal jurisdiction. *See, e.g.*, *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003). The Court must also evaluate the complaint and accompanying affidavits in the light most

---

[1] To preserve the status quo, and with the parties' consent, the Court stayed the sale of the airplane pending resolution of Defendant's motion to dismiss.

favorable to the plaintiff. *See, e.g.*, *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). Still, it remains the plaintiff's burden to show the Court has personal jurisdiction over the defendant. *See, e.g.*, *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).

A court sitting in diversity must respect the contours of the forum state's long-arm statute. *See, e.g.*, *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). The Sixth Circuit has long understood that Ohio's long-arm statute is "not coterminous" with the Federal Due Process Clause. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012) (quoting *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008)) ("We have recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits"). Courts assess personal jurisdiction with a two-part test that asks "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006).[2]

Plaintiff argues that the Court has specific jurisdiction over Defendant under both the Ohio long-arm statute and the Federal Due Process Clause. Doc. No. 10 at PageID 116, 119. Both

---

[2] The Ohio legislature recently revised the state's long-arm statute to permit general jurisdiction over non-resident defendants where it was not recognized before. 2020 Ohio Laws 44 (amending Ohio Rev. Code § 2307.382). Prior to the amendment, Ohio's long-arm statute provided that a court may only exercise personal jurisdiction over an out-of-state defendant under one of nine enumerated criteria. *See Schneider*, 669 F.3d at 699. Courts construed the statute as foreclosing general jurisdiction because personal jurisdiction was only proper if the plaintiff's claim arose out of one of the statutorily identified actions. *See Conn*, 667 F.3d at 717 ("Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute"). After amendment, the long-arm statute now reads, "In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C). The revision suggests that the long-arm statute no longer precludes jurisdiction where a non-resident's "continuous and systematic" contact with Ohio renders it at home in the state. *Cf. Conn*, 667 F.3d at 717. This interpretation does not, however, collapse the long-arm statute's specific jurisdiction test into the Federal standard. Plaintiffs -- as Plaintiff does here -- asserting that a court has specific jurisdiction over a defendant must still demonstrate their claim arose from one of the enumerated factors. Ohio Rev. Code § 2307.382(A).

4

standards require that the plaintiff's cause of action "arise from" the defendant's conduct in the forum state. *See, e.g.*, *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014); *Brunner*, 441 F.3d at 463. Plaintiff cites three facts as proof the Court has jurisdiction: that Defendant knew Chester was an Ohio resident when it negotiated the lease; Chester intended to bring the airplane to Ohio; and Defendant's course of dealing with Stormont. Doc. No. 10 at PageID 116–17. The Court is not persuaded it has personal jurisdiction over Defendant because the lease was negotiated in New Mexico, involved property in New Mexico, and the transaction only had an incidental effect on Ohio. Doc. No. 9 at PageID 87. In no way did this case arise from Defendant's actions in, or directed at, Ohio.

### A. Ohio Long-Arm Statute

Ohio's long-arm statute provides that a court can exercise specific personal jurisdiction over a defendant if the claim "ar[ose] from" any one of nine enumerated actions. Ohio Rev. Code § 2307.382(A). Plaintiff argues its claims arose from Defendant's:

> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in this state;
>
> . . .
>
> (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . . .

Ohio Rev. Code § 2307.382(A). The Court will examine each standard in turn.

5

### 1. **Transacting Any Business in Ohio**

Courts evaluate the "transacting any business" test on a case-by-case basis because its general terms lend to a fact-sensitive analysis. *Marrik Dish Co., LLC v. Wilkinson CGR Cahaba Lakes, LLC*, 835 F. Supp. 2d 449, 453 (N.D. Ohio 2011). Two factors, however, have emerged as important guideposts when the claim is based in contract: (1) if the defendant reached out to the plaintiff in the forum state to create a business relationship; and (2) whether the parties conducted their contract negotiations in the forum state or agreed on terms affecting the forum state. *See Ricker v. Fraza/Forklifts of Detroit*, 828 N.E.2d 205, 209–10 (Ohio App. Ct. 2005); *see also Indus. Fiberglass Specialties, Inc. v. ALSCO Indus. Prods.*, No. 3:08-cv-0351, 2009 U.S. Dist. LEXIS 35431, at *9–10 (S.D. Ohio Apr. 13, 2009). "[M]erely directing communications to an Ohio resident for the purpose of negotiating an agreement" or fulfilling a contract, "without more, is insufficient to establish that a defendant transacts business in the state." *Indus. Fiberglass Specialties, Inc.*, 2009 U.S. Dist. LEXIS 35431, at *10. "Rather, there must additionally be some continuing obligation that connects the nonresident defendant to the state or some terms of the agreement that affect the state." *Id.* (quoting *Shaker Constr. Grp., LLC v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008)).

Ohio is implicated in this case only by coincidence, not by intention. Chester learned about airplane from Stormont, whom Plaintiff concedes is not affiliated with Defendant. Doc. No. 10 at PageID 112–13; Doc. No. 10-1 at PageID 126. Defendant did not prompt, or otherwise encourage, Stormont to find a buyer for its airplane. Doc. No. 9-1 at PageID 106. Indeed, Defendant does not and never has advertised its airplanes in Ohio. Doc. No. 9-2 at PageID 110. Stormont facilitated the transaction by sending an unsolicited message to Greenlaw that Chester was interested in the airplane. Doc. No. 9-1 at PageID 105. Plaintiff argues that Greenlaw's text messages to Chester, after he returned to Ohio upon signing the contract, constitute "transacting

business" in the state. Doc. No. 10 at PageID 117. But these communications occurred after the contract was signed and dealt with responsibility for the damage to the plane, not the essential terms of the agreement. *See Shaker Constr. Grp., LLC*, 2008 U.S. Dist. LEXIS 79645, at *10–11 (finding that communications about contract terms in the forum state were insufficient to confer jurisdiction because the terms did not "affect[] the forum state of Ohio").

Plaintiff does not dispute that the entirety of the transaction was negotiated, executed, and allegedly breached in New Mexico. Doc. No. 10 at PageID 113–14. Defendant's sole contractual obligation -- to deliver the airplane to Plaintiff -- was to take place in New Mexico. Doc. No. 8-1 at PageID 82. Plaintiff alleges that Defendant breached the contract in New Mexico by failing to deliver the airplane in flying condition. Doc. No. 8 at PageID 75–76. Although Chester intended to bring the airplane to Ohio, its home base at the time of contract was New Mexico, and Defendant was not required to update its registration before relinquishing possession. Doc. No. 8-1 at PageID 82; Doc. No. 9-1 at PageID 106. Plaintiff was obligated to make payments to Defendant -- presumably from Ohio to Tennessee -- but the mere origin of payment is insufficient to meeting the "transacting business" standard. *See, e.g.*, *Kroger Co. v. Malease Food Corp.*, 437 F.3d 506, 512–13 (6th Cir. 2006) (lease payments made from Ohio to an out-of-state lessee did not constitute transacting business).

Plaintiff also argues that Defendant's prior dealings with Stormont constitute "transacting business" in Ohio. Doc. No. 10 at PageID 117. But Stormont's interactions with Defendant have no bearing on whether *Plaintiff's* claims arose from Defendant's conduct. Doc. No. 9-1 at PageID 106; Doc. No. 10-2 at PageID 132. Even if it did, the entirety of the Stormont transaction took place in Utah with little-to-no bearing on Ohio. Doc. No. 9-1 at PageID 106. Stormont took possession of the airplane in Utah and transported it to Ohio after the deal was complete. Doc.

7

No. 10-1 at PageID 126. Ohio is only implicated in the Stormont contract because he makes lease payments from Ohio to Defendant. Doc. No. 10-2 at PageID 132. But, again, payment to a non-resident from the forum state -- standing alone -- does not establish the non-resident's connection to the forum state. *See Kroger Co.*, 437 F.3d at 513 ("[T]he contacts required to exercise personal jurisdiction over the defendant cannot be the result of the unilateral activity of the resident"); *Nat'l City Bank v. Yevu*, 898 N.E.2d 52, 54 (Ohio Ct. App. 2008) ("[T]he mere existence of a contract involving a forum resident does not confer personal jurisdiction, a choice of law provision standing alone does not confer personal jurisdiction, and the making or sending payments to Ohio alone may not establish minimum contacts for purposes of personal jurisdiction").

Defendant's performance under the contract ended when it delivered the airplane to Plaintiff in New Mexico. Doc. No. 8 at PageID 72–76. After that, Defendant was not subject to any continuing obligation to Plaintiff. *Id.* The absence of ongoing performance owed by the non-resident and directed at the forum state distinguishes it from the main case Plaintiff relies on. Doc. No. 10 at PageID 116 (citing *Wright Int'l Express v. Roger Dean Chevrolet, Inc.*, 689 F. Supp. 788 (S.D. Ohio 1988)). In *Wright International Express*, a non-citizen defendant "actively sought" to lease its airplane to an Ohio resident. 689 F. Supp. at 791–92. Contract negotiation took place while the plaintiff was in Ohio and included maintenance provisions that created "continuing obligations" for the defendant in Ohio. *Id.* at 791. The defendant eventually mailed a termination notice to the plaintiff in Ohio, which presumably prompted the lawsuit. *Id.* at 792. Here, Defendant's contacts with Ohio are far more limited because its conduct did not extend beyond New Mexico. Doc. No. 8 at PageID 72–76. Plaintiff has therefore not shown Defendant transacted any business in Ohio.

### 2. Contracting to Supply Services or Goods in Ohio

Because Defendant was under no obligation to deliver the airplane to Ohio, it did not "supply services or goods" in Ohio. Ohio Rev. Code § 2307.382(A)(2). "[T]he actual transaction of business in-state is a prerequisite to the exercise of long-arm jurisdiction under § 2307.382(A)(2)." *Reg Transp. Servs., LLC v. Dutch Miller Chrysler/Jeep/Ram*, No. 2:18-cv-1176, 2019 WL 3413858, at *3 (S.D. Ohio July 29, 2019) (quoting *Rosenberg v. ABF Freight Sys.*, No. 13-cv-651, 2014 WL 1308805, at *5 (S.D. Ohio Mar. 31, 2014)). Jurisdiction under this subsection is proper only when the defendant was obligated to deliver "goods or services *in Ohio*." *Id.* (emphasis in original); *see also Brunner*, 441 F.3d at 464 (explaining that the non-resident defendant's arranging of a trip to Canada for Ohio residents through e-mail, fax, and telephone did not amount to "supply[ing] services or goods" in Ohio). Defendant here -- even if the agreement never fell through -- was never responsible for delivering the airplane to Ohio. Doc. No. 8-1 at PageID 82; Doc. No. 9-1 at PageID 106. The Court therefore finds it does not have jurisdiction under § 2307.382(A)(2).

### 3. Causes Injury by Breach of Warranty Outside Ohio

Jurisdiction under § 2307.382(A)(5) is proper only if (1) the defendant "[c]aus[ed] injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state" and (2) "the person also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." Ohio Rev. Code § 2307.382(A)(5). "Substantial revenue is a flexible term," but courts view in-state sales that amount to 5% or less than total sales as insufficient. *Hoover Co v. Robeson Indus. Corp.*, 904 F. Supp. 671, 674 (N.D. Ohio 1995) (quotation omitted); *see also IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 771 (N.D. Ohio 2019) ("Generally, sales amounting to less than 5% of total sales are not considered substantial

9

revenue"). Regular in-state business dealings require proof that the defendant's in-state activities are more than "sporadic." *Beightler v. Produkte Fur Die Medizin AG*, 610 F. Supp. 2d 847, 852 (N.D. Ohio 2009); *see also Nicholson v. Jayco, Inc.*, No. 5:15-cv-2010, 2016 WL 5463215, at *6 (N.D. Ohio Sept. 29, 2016) (finding defendant did not conduct regular business in Ohio when 0.003% of its sales came from Ohio and the defendant maintained no in-state corporate or sales presence).

Airplane leases and sales amount to a side business for Defendant. Doc. No. 9-2 at PageID 110. Defendant's main source of revenue is private donations used to fund its missionary work, though it periodically receives donated aircraft. *Id.* Defendant only leases or sells 2-to-3 airplanes per year, and its only two Ohio customers were Plaintiff and Stormont. *Id.* Though Defendant does not put a figure on what percentage of its cash flow came from these two transactions, there is no dispute that the amount is insubstantial. *Id.*; Doc. No. 10 at PageID 118.

It is also uncontested that Defendant does not maintain an Ohio sales presence. Doc. No. 9-2 at PageID 110. Nor does Defendant advertise its aircrafts in Ohio. *Id.* Defendant would never have known Plaintiff was interested in its New Mexico airplane absent Stormont's unsolicited message to Greenlaw. Doc. No. 10-1 at PageID 127. Jurisdiction over Defendant is therefore not proper under § 2307.382(A)(5) or Ohio's long-arm statute generally.

### B. Federal Due Process Clause

Because the Court cannot assert personal jurisdiction over Defendant under Ohio's long-arm statute, it is unnecessary evaluate whether jurisdiction is proper under the Fourteenth Amendment's Due Process Clause. *See Kroger Co*, 437 F.3d at 514–15 ("Because we find that [the defendant] did not establish the minimum contacts necessary for the district court to exercise jurisdiction under the Ohio long-arm statute, it is unnecessary for us to engage in the constitutional due process inquiry").

## III.

For the foregoing reasons, the Court: (1) **GRANTS** Defendant's motion to dismiss for lack of personal jurisdiction (Doc. No. 9); (2) **DENIES AS MOOT** Plaintiff's motion for a preliminary injunction (Doc. No. 4); (3) **DISSOLVES** the January 27, 2021 stay on a sale of the airplane; (4) **DISMISSES WITHOUT PREJUDICE** Plaintiff's complaint (Doc. No. 8); and (5) **TERMINATES** this case on the Court's docket.

**IT IS SO ORDERED.**

Date:   May 17, 2021                             s/Michael J. Newman
                                                              Hon. Michael J. Newman
                                                              United States District Judge